IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| MICHAEL GRAY, <br><br> Plaintiff, <br><br> vs. <br><br> HIRERIGHT, LLC, <br><br> Defendant. | Case No. 5:18-cv-06177-NKL |

## ORDER

Defendant HireRight, LLC moves pursuant to 28 U.S.C. § 1404(a) to transfer this proceeding brought by plaintiff Michael Gray for alleged violations of the Fair Credit Reporting Act ("FCRA") to the United States District Court for the Middle District of Tennessee. For the reasons discussed below, the motion to transfer is denied.

### I. ALLEGED FACTS

Mr. Gray applied in or around August 2018 for employment with Communications Solutions, LLC ("CS"), and after interviewing him, CS hired him. *Response to Defendant's Motion to Transfer Venue,* Doc. 26, p. 1. He worked at CS for approximately two weeks, at which time CS told him that his employment was being terminated because his consumer report, which had been generated by HireRight, indicated that he had lied during the hiring process concerning the absence of a criminal record in the last seven years. *Id.* Specifically, the report indicated that Mr. Gray had been charged with or convicted of felony charges within the seven years preceding his employment application. *Petition*, Doc. 1-1, ¶¶ 11-17. Mr. Gray advised CS that he had not been charged or convicted of any crime in the last seven years. Doc. 26, p. 1. CST nonetheless

terminated Mr. Gray on the basis of HireRight's purportedly inaccurate, misleading, and incomplete consumer report. *Id.*; *see also* Petition, Doc. 1-1, ¶ 14.

HireRight is a background screening company. *Defendant's Suggestions in Support of Its Motion to Transfer to the Middle District of Tennessee Pursuant to 28 U.S.C. § 1404(a)*, Doc. 12, p. 6. "[I]ts U.S. hub of operations for North American public criminal record processing" and its "operations department for the United States" are in Nashville, Tennessee. *Id.* "The operations department is responsible for creating, maintaining, and implementing policies and procedures regarding the preparation and delivery of background reports, including compliance with the FCRA." *Id.* HireRight states that "[t]he individuals with knowledge of the implementation of those procedures, including as specifically applied to this case, are located in Tennessee." *Id.*, pp. 6-7. The team of "Investigative Specialists" that perform the research and analysis that may be included in the background reports "are primarily located in Tennessee." *Id.*, p. 7.

Of HireRight's 1,900 employees, 260 are in Tennessee. *Id.*, p. 6. In contrast, HireRight has just one employee based in Missouri, a person who works from home in a "technical support capacity" and does not process background reports. *Id.*

Mr. Gray initiated a putative class action against HireRight on November 6, 2018, alleging violations of the FCRA. Doc. 1-1, *Petition*. He alleges that HireRight produced a consumer report concerning Plaintiff that was "inaccurate, misleading, and incomplete," and that HireRight's "failure to utilize procedures designed to comply with the unambiguous mandates of the FCRA when producing consumer reports is negligent, reckless and willful." Doc. 1-1, *Petition,* ¶¶ 10, 23. He seeks to represent three nationwide classes defined as follows: (1) "[a]ll individuals who were the subject of one or more consumer reports in which the Defendant identified an individual as having a [f]elony or [m]isdemeanor record in the last seven years when they did not, from

November 6, 2013, through the conclusion of this matter"; (2) "[a]ll individuals who were the subject of one or more consumer reports in which the Defendant identified the [c]ourt [r]ecords as being within the last seven years but included records beyond seven years, from November 6, 2013, through the conclusion of this matter"; and (3) "[a]ll individuals who were the subject of one or more consumer reports in which Defendant failed to include information specifying that the consumer had no criminal records in the last seven years from November 6, 2013, through the conclusion of this matter." *Id.*, ¶ 29. He seeks statutory and punitive damages as well as costs and attorneys' fees, but not actual damages. *Id.*, ¶¶ 50-52, p. 9, ¶¶ c and d.

After removing Mr. Gray's proceeding from state court to federal court, HireRight moved for transfer of this case to the Middle District of Tennessee.

**II.     Standard**

The Court may "transfer any civil action to any other district or division where it might have been brought," so long as it is "[f]or the convenience of parties and witnesses, in the interest of justice . . . ." 28 U.S.C. § 1404(a). Thus, after the appropriateness of venue in the proposed forum is established, the Court must undertake "'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988) (citation omitted).

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). However, "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate

3

merely because it is his home forum is considerably weakened." *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

A "'transfer should not be granted when to do so would merely shift, rather than eliminate, the inconvenience of the parties.'" *Halton v. Am. Int'l Grp., Inc.*, No. 06-0443, 2006 U.S. Dist. LEXIS 92598, at *6 (E.D. Wis. Dec. 18, 2006) (quoting *Ellis Corp. v. Team Textile Corp.*, 574 F. Supp. 170, 173 (N.D. Ill. 1983)).

The decision as to whether to transfer a case is discretionary. *Stewart Org.*, 487 U.S. at 29, 108 S. Ct. at 2244.

**III. Analysis**

There is no dispute that this action could have been filed in the Middle District of Tennessee. *See, generally,* Doc. 26. The question before the Court is whether convenience and the interests of justice favor transfer.

**a. Convenience**

Among the factors that courts traditionally consider in evaluating convenience are:

(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Terra Int'l*, 119 F.3d at 696.

Mr. Gray's home state of Missouri is the more convenient forum for him, while HireRight claims that Tennessee is more convenient. "Typically, 'the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover.'" *C-Mart, Inc. v. Metro. Life Ins. Co.*, No. 13-0052 AGF, 2013 U.S. Dist. LEXIS 76587, at *9 (E.D. Mo. May 31, 2013) (citation omitted). HireRight states that its

"operations department for the United States is based in Tennessee," and that the "operations department's preparation of background reports can include research and analysis performed by a team of Investigative Specialists that are primarily located in Tennessee." Doc. 12, pp. 6-7. HireRight does not specify how many employees work either as Investigative Specialists or in the operations department generally. HireRight identifies just two employees based in Tennessee who purportedly have relevant information: (1) the Director of Operations, and (2) the individual who completed the public records search for and prepared Plaintiff's final report. The only person whose sworn statements HireRight submitted to support the pending motion resides not in Tennessee, but in California. Doc. 26, p. 5; Doc. 27, p. 6, n.1.

The fact that HireRight has identified just two Tennessee-based employees as witnesses does not tip the scale in HireRight's favor. *See James v. Experian Info. Sols., Inc.*, No. 12-0902, 2014 U.S. Dist. LEXIS 242, at *13 (E.D. Va. Jan. 2, 2014) (finding that defendant had "not met its burden to show that its witnesses would be materially inconvenienced by making an appearance in [the original] forum" where it "mentioned only two witnesses . . . , both of whom [we]re [defendant's] employees whose appearance can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action") (quotation marks and citation omitted). The Tennessee residence of two HireRight employee-witnesses is even less compelling a factor because counsel for both parties have offered to conduct depositions of party witnesses in a location that is convenient for each witness. Doc. 12, p. 12, n.1; Doc. 26, p. 5 n.5. and p. 7.

The fact that this is a putative class action does not necessarily change the calculus. Although potential class members could reside throughout the country, in the event that the proposed classes are not certified, the potential class members' convenience of course will be of

5

no consequence.  *See Lewis v. Sw. Airlines Co.*, No. 16-00749, 2016 U.S. Dist. LEXIS 72222, at *13 (N.D. Cal. June 2, 2016) (noting that "the convenience of putative class members other than [the named plaintiff] will become irrelevant if class certification is ultimately denied") (quotation marks and citation omitted).

The factor of the parties' convenience thus does not weigh in favor of either forum.  Further, neither Tennessee nor Missouri appears more convenient for members of the putative class.  At best, the prospect of a nationwide class is a neutral factor.

As for non-party witnesses, Mr. Gray argues that CS, his former employer, is a Missouri-based third-party witness that warrants denying the motion to transfer.  However, Mr. Gray does not explain how CS's testimony is relevant to this case in which he is not seeking actual damages.  At the same time, however, HireRight has pointed to no third-party witness, in Tennessee or otherwise, that it intends to call.  Instead, HireRight argues that if HireRight employees who have relevant information later cease to work for HireRight, they will be out of the reach of this Court's subpoena power.  This argument is without merit.  Employees of a party are generally assumed to be within the control of the party, and their convenience is not given the "paramount concern" that courts generally afford non-parties.  *Geismann v. ZocDoc, Inc.*, No. 14-0472 CDP, 2014 U.S. Dist. LEXIS 118706, at **6-7 (E.D. Mo. Aug. 26, 2014) (citing cases).  Speculation that current employees may not remain in HireRight's employ does not warrant a departure from this rule, especially because as much as it is possible for a HireRight witness to leave the company, it also is possible that a HireRight witness will leave the state of Tennessee.  Thus, the factor of third-party witness convenience does not weigh in favor of transfer.

The records at issue in this case are located in both Missouri and Tennessee.  While the report at issue in this case was prepared in Tennessee (*see Declaration of Catherine Aldrich*, Doc.

6

12-1, ¶ 14), it was based on Missouri records. The Tennessee-generated report is central to this case, but so too are the Missouri government records that purportedly belie the report. More importantly, the documents at issue are likely available electronically. HireRight has not suggested that Tennessee houses a repository of only hard-copy documents relevant to this case. HireRight's argument—which, in effect, is that it would be too burdensome for it to electronically produce for this lawsuit the same documents that it produced to CS, and the same type of documents it has produced to other customers throughout the country with respect to the potential class members—does not withstand scrutiny. This factor thus does not weigh in favor of either forum.

The substantive law at issue in this case is federal statutory law, and it applies equally in each forum. Thus, this factor too does not weigh in favor of either forum.

As for the final consideration, the location where the conduct at issue occurred, Mr. Gray argues that because the report, which is based on Missouri records, was requested in and delivered to Missouri, and injured him in Missouri, the relevant locus is Missouri. HireRight insists that, because the report was created in Tennessee, following a public records search conducted in Tennessee, and the policies and procedures governing HireRight's background reports were created and implemented in Tennessee, that state is the locus.

Mr. Gray is not seeking actual damages, but had he not been allegedly injured in Missouri, on the basis of Missouri records, sent to a Missouri-based client of the defendant, he would have no claim at all. The fact that he seeks to represent a nationwide class of people about whom HireRight purportedly has issued similarly false or misleading reports does not automatically shift the presumptive locus of the case to Tennessee, as the putative class members' alleged injuries occurred throughout the country.

### b. Interests of Justice

In analyzing the interests of justice, courts consider:

(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*Id.* Here, judicial economy slightly favors the current forum, as the Court now has some familiarity with the alleged facts, and HireRight has not suggested that similar actions already are pending in the Middle District of Tennessee. Mr. Gray's choice of forum of course weighs against transfer, but because this is a purported nationwide class action, Mr. Gray's preference is given less than the "substantial weight" ordinarily afforded a plaintiff's choice of forum. *But see* W. Rubenstein, 2 Newberg on Class Actions § 6:38 (5th ed. 2018) (noting that "plaintiff's choice of forum is accorded more deference when there is a significant material connection between the chosen forum and the events underlying the action" and "when the named plaintiffs reside in the chosen forum," as opposed to when "the class action forum appears to have been chosen solely for tactical reasons unrelated to the geographic realities"). There is no indication that litigating in this forum would impose significant costs on HireRight. Written discovery will almost certainly be exchanged electronically. The cost of transporting the only two Tennessee-based witnesses that HireRight has identified (*see* Doc. 12, p. 10; Doc. 12-1, ¶ 15) will not be much greater than the cost of Mr. Gray's travel to Tennessee, and as a business with over 1,900 employees in multiple states, HireRight cannot reasonably complain that the cost would be excessive. On the other hand, Mr. Gray could very well need to retain counsel admitted to practice in Tennessee, which likely would increase his litigation costs. Although counsel's convenience is not relevant (*see, e.g., Barela v. Experian Info. Sols., Inc.*, No. 04 C 5144, 2005 U.S. Dist. LEXIS 19105, at **12-13 (N.D. Ill. Apr. 4, 2005)), the additional cost to and possible hurdle for Mr. Gray is a factor. Mr. Gray may have

an easier time enforcing a judgment against HireRight in the state that hosts its "hub of operations for North American public criminal record processing" and its "operations department for the United States." The parties do not suggest that they would encounter any obstacles to a fair trial in either forum. Finally, as this case concerns claims under a federal statute, there are neither any conflict-of-law nor local-law issues to consider.

### c. Balancing the Factors

While the convenience factors are neutral, the interests-of-justice analysis favors the current forum. The statute permitting transfers of civil actions does so only insofar as it is "in the interest of justice . . . ." 28 U.S.C. § 1404(a). Because the Court cannot find that the interest of justice warrants transfer, the Court deems transfer inappropriate.

In support of its motion, HireRight cites several decisions granting motions to transfer. However, each of those cases is distinguishable. Several of those cases were brought by plaintiffs who either did not live in the district in which they brought suit or were not injured there. *See Leonard v. Del. N. Cos. Sport Serv.*, No. 2:15-04139-NKL, 2015 U.S. Dist. LEXIS 108409, at \*\*10-12 (W.D. Mo. Aug. 18, 2015) (noting that plaintiff did not live in the Western District of Missouri, more witnesses were located in the Eastern District, and litigating in the Eastern District would decrease costs for both sides); *In re Apple, Inc.*, 602 F.3d 909, at 911 (8th Cir. 2010) (noting that plaintiff, who accused Apple of engaging in "abusive litigation" in other countries, was a Taiwanese corporation with its principal place of business in Taiwan); *Bogollagama v. Equifax Info. Servs.*, No. 09-1201, 2009 U.S. Dist. LEXIS 110821, at \*6 (E.D. Pa. Nov. 30, 2009) (noting that plaintiff did not bring the suit, which concerned allegedly derogatory and inaccurate credit reports, in his home forum); *Klingensmith v. Paradise Shops*, No. 07-322, 2007 U.S. Dist. LEXIS 51591, at \*2, \*6 (W.D. Pa. July 17, 2007) (noting, in case concerning the printing by a national

chain of stores of more than the last five digits of a credit card number on receipts, that one of the two plaintiffs was a resident of an entirely different state and his cause of action arose in a different state); *Murphy v. Trans Union, LLC*, No. 12-499, 2012 U.S. Dist. LEXIS 115610, at **11-12 (E.D. Pa. Aug. 15, 2012) (noting that the plaintiff lived in a different state from the one in which she brought suit, and plaintiff had "not alleged that any particular event underlying her FRCA [*sic*] claim occurred in" the original forum state). In contrast, Mr. Gray resides in this district and was injured here.

In several other cases that HireRight cites, the defendants specifically identified non-party witnesses or numerous employees with relevant information who would be inconvenienced if they had to appear in the original forum. *See Geismann*, 2014 U.S. Dist. LEXIS 118706, at **7-8 (noting, in case concerning unsolicited faxes received in Missouri, that the movant identified by name non-party witnesses who could be compelled to testify in the proposed transferee forum but could not be compelled to testify in Missouri); *Perrill v. Equifax Info. Servs., LLC*, No. 13-3333, 2014 U.S. Dist. LEXIS 89107, at **9-10 (D. Minn. June 30, 2014) (noting that a third-party government agency and its affiliates, who were "key to the lawsuit" as witnesses, and even "[t]he vast majority of the relevant witnesses identified by Plaintiffs" were located in the proposed transferee forum state); *Barela*, 2005 U.S. Dist. LEXIS 19105, at *11 (noting that the plaintiff resided in a different state, and "[m]ost (if not virtually all) of those witnesses appear[ed] to be" in the proposed transferee forum); *In re Volkswagen*, 371 F.3d 201, 205-06 (5th Cir. 2004) (ordering transfer of case arising out of car accident in San Antonio to federal court in that district after considering the convenience of "numerous non-party fact witnesses identified in [the] transfer motion"); *C-Mart, Inc. v. Metro. Life Ins. Co.*, No. 13-00052 AGF, 2013 U.S. Dist. LEXIS 76587, at **8-9 (E.D. Mo. May 31, 2013) (finding that the defendants "demonstrated that the majority of

the witnesses and evidence [were] located in" the proposed transferee forum state); *Ward v. Family Dollar Stores, Inc.*, No. 06-01060, 2006 U.S. Dist. LEXIS 96846, at *8 (N.D. Ala. Sep. 29, 2006) (noting, in case concerning Fair Labor Standards Act, that defendant "identified approximately thirty-seven employee witnesses" in the proposed transferee state); *Lopez*, 2015 U.S. Dist. LEXIS 66176, at *6 (noting that defendants "submitted evidence to show that there will be several key witnesses . . . , including former employees and third-party witnesses" residing in the proposed transferee forum); *Simpkins v. Univ. of Kan. Hosp. Auth.*, No. 16-04009-NKL, 2016 U.S. Dist. LEXIS 21634, at **4-5 (W.D. Mo. Feb. 23, 2016) (finding that plaintiff's residence was "significantly closer" to the proposed transferee forum than the original forum and that witnesses' convenience favored transfer); *Williams v. Advance Am.*, No. 07-04187-NKL, 2007 U.S. Dist. LEXIS 82342, at *4, *6 (W.D. Mo. Nov. 6, 2007) (finding that witness convenience favored transfer and noting that "all of the actions forming the basis for the present suit occurred outside of this District"); *Lou v. Belzberg*, 834 F. 2d 730, 739 (9th Cir. 1987) (finding that the agreement at issue was negotiated and executed in New York and "the majority of the witnesses lived and worked in the New York area"); *Gomez v. Kroll Factual Data, Inc.*, Civil Action No. 12-02773, 2013 U.S. Dist. LEXIS 23130, at *7, *9 (D. Md. Feb. 19, 2013) (permitting transfer where defendant provided affidavits from three representatives indicating that they were located in Colorado and all of the relevant documentation, except one list that was publicly available, was located in Colorado); *Georgouses v. Natec Res.*, 963 F. Supp. 728, 731 (N.D. Ill. 1997) (noting that "the majority of potential witnesses," as well as two of the three individual defendants, were residents of Texas, and also that there might have been a "personal jurisdictional problem" with the individual defendants in the original forum); *Owner-Operator Indep. Drivers Ass'n v. N. Am. Van Lines, Inc.*, 382 F. Supp. 2d 821, 825 (W.D. Va. 2005) (noting that defendant's employee

witnesses and other non-party witnesses resided either in or closer to the proposed forum state). Here, HireRight has not identified a single non-party witness, and it has identified only two employee witnesses residing in Tennessee.

Nor has Hire Right suggested that similar actions are pending in the Middle District of Tennessee, so as to warrant transfer for possible consolidation. *Cf. Silverberg v. H&R Block, Inc.*, No. 06-cv-0519, 2006 U.S. Dist. LEXIS 29797, at *8 n.6 (E.D. Mo. May 12, 2006) (transferring case to Western District of Missouri because, *inter alia*, the matter "mirror[ed] eight class action lawsuits that ha[d] already been filed in the Western District," and there were additional suits in other district courts that the defendant wished to consolidate in the Western District); *Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 47 (D.D.C. 2017) ("Here, two similar cases are currently pending in the District of Utah, and transfer of the Bartolucci and Henry actions will serve the interests of judicial economy."); *Italian Colors Rest. v. Am. Express Co.*, No. 03-3719, 2003 U.S. Dist. LEXIS 20338, at **10-11 (N.D. Cal. Nov. 7, 2003) (noting that a similar action was already pending in the proposed transferee forum and finding that plaintiffs had engaged in forum-shopping).

Finally, whereas Mr. Gray was injured in Missouri because his Missouri criminal records (or lack thereof) allegedly were misrepresented by HireRight, many of the cases that HireRight cites involved conduct that had no direct connection to the original forum state. *See, e.g., Bartolucci*, 245 F. Supp. at 46–47 (finding that "the District of Columbia has 'no *meaningful* nexus to the controversy and the parties" and "the District of Columbia's connection to the controversy and to the defendants is identical to that of any other jurisdiction" in case alleging nationwide conspiracy to restrain sales of contact lenses); *S.E. Textile Machinery, Inc. v. H. Warshow & Sons,*

*Inc.*, No. 05-0066, 2006 U.S. Dist. LEXIS 5366, at *6 (W.D. Va. Jan. 27, 2006) (finding that "the Western District's only connection to this case is that Plaintiff[']s business is located in Danville").

### IV. Conclusion

For the reasons discussed above, the Court DENIES HireRight's motion to transfer the case.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 5, 2019
Jefferson City, Missouri